**IN THE COURT OF APPEALS OF IOWA**

No. 15-0355
Filed April 27, 2016

VISTA INVESTMENTS, L.C.,
an Iowa Limited Liability Company,
    Plaintiff-Appellee,

vs.

IOWA OFFICE SUPPLY, INC.,
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Stephen B. Jackson Jr., Judge.

Iowa Office Supply, Inc. appeals a ruling from the district court declaring the option to purchase in a lease agreement void. **AFFIRMED.**

Angie J. Schneiderman of Moore, Heffernan, Moeller, Johnson & Meis, L.L.P., Sioux City, for appellant.

Timothy A. Clausen of Klass Law Firm, L.L.P., Sioux City, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

In this action seeking declaratory relief, Iowa Office Supply, Inc. (IOS) appeals the district court's ruling holding the option to purchase included in a lease agreement between IOS and Vista Investments, L.C. (Vista) is void. Because we find IOS failed to meet the condition precedent to the option to purchase, we affirm the district court's ruling.

## I. Background Facts and Proceedings.

Vista owns a commercial property located in Hiawatha, Iowa. IOS entered into a lease agreement with Vista on January 18, 2005, to rent the property. The lease ran for a ten-year term from January 1, 2005, to December 31, 2014. The lease required IOS to pay a rental payment of $7875 per month in advance on the first day of each month. Additionally, because the lease was a "triple net" lease, IOS was responsible for paying for repairs to the property, utilities, and taxes, and for maintaining casualty and liability insurance on the property.

The parties executed the lease in conjunction with a stock-purchase agreement under which DDS Investments, LLC (DDS)—an entity owned by David Schmidt—purchased a majority of the shares of IOS from Kirby Roberts. DDS subsequently purchased the remaining shares of IOS from Steve Brashears and Michael Wilbur. Brashears, Roberts, and Wilber, along with their spouses, owned and continue to own Vista.

As a requirement of the stock-purchase agreement, IOS obtained new leases for a number of IOS business properties from Vista, including the Hiawatha property. As stated in the stock-purchase agreement, the new leases

were to be for ten-year terms with a right to purchase the property at fair market value at the end of the lease and a right of first refusal during the lease term.[1] The lease at issue included the following option-to-purchase provision:

> Landlord shall, on receipt of a written notice from Tenant at least thirty (30) days prior to the termination of the lease, stating that Tenant elects to purchase the property at the end of the lease pursuant to the provisions of this Lease Agreement, convey the demised premises to Tenant, providing Tenant shall have duly and punctually fulfilled all of the provisions and conditions of this Lease Agreement, subject to the following conditions: . . . .

During the negotiation and closing of the stock-purchase agreement and the lease, Dan Moore—the attorney for DDS and Schmidt—prepared a memorandum of unrecorded lease dated January 17, 2005. The memorandum contained an identical provision regarding the option to purchase as stated in the lease and cited above—including the "duly and punctually" language.

Once the lease was in effect, IOS struggled on a number of occasions to make timely rental, tax, and insurance payments.

On November 28, 2011, Vista sent IOS a notice of default for failure to pay the insurance premiums for the property. Vista sent IOS another notice of default on June 15, 2012, for IOS's failure to pay real estate taxes. On August 7, 2012, Vista sent a notice of default to IOS advising that IOS had again failed to pay the real estate taxes on the property, as well as the rental payments for the months of July and August 2012. On October 5, 2012, Vista again sent a notice of default to IOS for failure to pay the real estate taxes, to make timely rental

---

[1] In the recitals of the stock-purchase agreement it states, "The leases shall be for ten (10) years with the right to purchase the property at fair market value at the end of the lease and a right of first refusal during the term of the lease." However, at issue in this case is the option language provided in the lease.

payments for the months of September and October 2012, and to pay insurance premiums.

On April 30, 2013, IOS sent correspondence to Vista indicating its election to utilize the option to purchase under the terms of the lease.

Vista responded in a May 3, 2012 letter stating its position that the option to purchase was void as it had been forfeited by IOS's failure to duly and punctually fulfill the terms and obligations of the lease. Vista also notified IOS it was again in default for failure to pay the real estate taxes on the property and to pay the rental payments for the months of April and May 2013. Vista additionally stated IOS was in breach of the lease for making structural alterations to the property without Vista's consent.

Vista sent an additional notice of default to IOS on June 10, 2013, for failure to pay the June 2013 rental payment on time.

Vista filed this petition in equity on May 6, 2014, seeking a declaratory judgment that the option to purchase had been forfeited. Trial was held on December 3, 2014. At the time of trial, Brashears testified Vista had yet to receive IOS's rental payment for December 2014.

The district court held the option to purchase had been voided. IOS now appeals, contending (I) the district court erred in finding the terms duly and punctually created a condition precedent and IOS did not meet the condition; and (II) even if IOS did not meet the condition precedent, Vista did not properly forfeit the option to purchase.

**II. Standard of Review.**

The parties dispute the appropriate standard of review. Vista contends that because this matter involves interpretation of a contract, the action was tried at law and the scope of review should be for errors at law. IOS argues the matter was tried in equity, and the appropriate standard of review is de novo.

Our review of a declaratory judgment action depends upon how the matter was tried to the district court. *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010). "To determine the proper standard of review, we consider the 'pleadings, relief sought, and nature of the case [to] determine whether a declaratory judgment action is legal or equitable.'" *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006) (alteration in original) (quoting *Nelson v. Agro Globe Eng'g, Inc.*, 578 N.W.2d 659, 661 (Iowa 1998)). "Where there is uncertainty, a litmus test we have applied is whether evidentiary objections were ruled on by trial court. If so, the action is one at law." *Van Sloun*, 778 N.W.2d at 178 (citation omitted).

This action was filed in equity, although that fact is not significant. See *id.* Only two objections were made at trial, and neither objection was ruled on by the district court, but the lack of a ruling on the objections was not premised upon this action being filed in equity.[2] Other factors to consider include whether the parties filed motions typical of legal actions and whether the district court filed a "decree" as in an equitable action or a "judgment" as in a legal action. *Id.* Here, only a very limited number of motions were filed. Further, the district court did

---

[2] One objection related to foundation, and the court simply allowed counsel to make further inquiry to establish foundation, and the objection was not renewed. The second objection related to relevance, and the examining attorney revised the question.

not caption its ruling as either a decree or a judgment but rather a "ruling." However, we observe the ruling states in part, "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED." Additionally, Vista sought declaratory judgment relief and damages for breach, although the district court did not award or address the issue of damages. The relief sought involves the interpretation of the option terms of the contract and a declaration of the parties' rights in light of the facts and interpretation.

In *Van Sloun* our supreme court stated:

> "Generally, an action on contract is treated as one at law." *Atl. Veneer Corp. v. Sears*, 232 N.W.2d 499, 502 (Iowa 1975). Where the basic rights of the parties derive from the nonperformance of a contract, where the remedy is monetary, and where the damages are "full and certain, remedies are usually provided by actions at law, and equity has no jurisdiction." *Berry Seed Co. v. Hutchings*, 74 N.W.2d 233, 237 (Iowa 1956). "If . . . both legal relief and equitable relief are demanded, the action is ordinarily classified according to what appears to be its primary purpose or its controlling issue." *Mosebach v. Blythe*, 282 N.W.2d 755, 758 (Iowa Ct. App. 1979).

778 N.W.2d at 178-79.

Based on these factors, but conceding some trappings of an equity action, we conclude the essential character of the claim is the basic rights of the parties under the option terms of the contract and the action shall be treated as one at law. Our scope of review is thus for errors at law. The district court's findings of fact are binding upon this court if they are supported by substantial evidence. Iowa R. App. P. 6.904(3)(a).

**III. Error Preservation.**

The parties concur error is preserved as to issue I; however, Vista asserts that error was not preserved as to issue II—whether Vista properly forfeited the option to purchase. We observe that issue II was not presented to nor ruled upon by the district court. Additionally, IOS did not raise this issue in the December 26, 2014 motion to enlarge or amend the ruling. Therefore, error was not preserved as to issue II,[3] and we will consider only issue I.

**IV. Analysis.**

IOS asserts the district court erred in finding the duly and punctually language created a condition precedent to the option to purchase, and IOS did not meet the condition. In support of this assertion, IOS contends (1) Vista's forfeiture of the option to purchase was pretextual and improperly deprived IOS of a benefit bargained for in the lease; (2) the determination of whether IOS duly and punctually fulfilled the lease provisions should be measured at the end of the lease term; and (3) IOS substantially complied with the condition precedent.

***A. Creation of the Condition Precedent.***

We find the district court did not err in determining the duly and punctually language created a condition precedent to the option to purchase.

Conditions precedent are defined as "those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Khabbaz v. Swartz*, 319

---

[3] *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

N.W.2d 279, 283 (Iowa 1982) (citation omitted). "A determination that a condition precedent exists depends not on the particular form of words used, but upon the intention of the parties gathered from the language of the entire instrument." *Mosebach*, 282 N.W.2d at 759. The actions of the parties and the circumstances surrounding the formation of the contract affect the determination of whether the language in question creates a condition precedent. *Budde v. 3 Putt, L.L.C.*, No. 06-1546, 2007 WL 1202636, at *4 (Iowa Ct. App. Apr. 25, 2007).

> In its ruling, the district court stated:

> [T]he Court finds the terms in paragraph 29 of the Lease requiring that IOS "duly and punctually" perform its obligations is clearly a condition precedent. Paragraph 29 of the Lease provides IOS with the option to purchase the property at the end of the Lease term provided it "duly and punctually" fulfilled all provisions and conditions of the Lease. There is no ambiguity with respect to what the terms duly and punctually mean nor is there any doubt that the parties intended this language to be included in the Lease. Indeed, the Memorandum executed prior to the Lease itself contains identical language requiring IOS to duly and punctually perform all requirements of the Lease in order to exercise its right to purchase the property.[4]

We agree with the district court that the duly and punctually language created a condition precedent and required IOS to duly and punctually fulfill all its obligations under the lease in order to exercise the option to purchase. Substantial evidence supports the finding that the duly and punctually language is unambiguous and it was the intention of the parties to include the condition in the option provision.

---

[4] In the order on IOS's motion to enlarge or amend, the district court clarified:
> For the purposes of its ruling in the Findings of Fact, Conclusions of Law and Ruling, the Court notes that the importance of the fact that counsel for the Defendant was involved in the drafting of the Lease and the Memorandum of Lease is that confirms that the Defendant was aware of the pertinent provisions of the Lease from its inception, . . . .

Specifically, Brashears testified at trial that, when negotiating the stock-purchase agreement and lease, Vista had concerns with IOS's ability to make timely payments. Schmidt testified the option to purchase was a provision IOS considered to be important. The district court found the parties intended for the condition to the option to purchase to be included in the lease. We agree even though there may not have been specific negotiations relating to the language of the condition precedent. Vista gained more assurance that IOS would be expected to make timely payments, and in exchange IOS gained the potential opportunity to purchase the property at the end of the lease. As the district court found, Schmidt cannot claim to be unaware of the condition precedent because his attorney included the duly and punctually language in both the Memorandum and the lease, and Schmidt testified at trial he reviewed the lease.

The district court's findings that the duly and punctually language created a condition precedent to the option to purchase and that both parties were aware of the existence of the provision are supported by substantial evidence.

**B. Failure to Meet the Condition Precedent.**

We also conclude the district court did not err in finding IOS failed to meet the condition precedent to the option to purchase. IOS's contentions in opposition are not persuasive.

Substantial evidence supports that, contrary to IOS assertions, Vista's actions in refusing IOS's exercise of the option to purchase were not pretextual or primarily intended to nullify a bad bargain. Vista had clear reasoning for inclusion of the condition precedent in the option to purchase provision. It had

initial concerns regarding IOS's ability to secure timely payments, and those concerns appear to be legitimate based on the record.

Additionally, IOS asserts its compliance with the condition precedent should be measured at the time it attempted to exercise the option rather than throughout the term of the lease. But the option-to-purchase language does not specify a time period when performance should be evaluated. Accordingly, we believe performance for the option to purchase should be evaluated throughout the lease term. The condition precedent served as an incentive for timely payments during the term of the lease, and the condition would be rendered useless if measured at the time of exercising the option.

With respect to the language used to create a condition precedent, "duly" means to act "in a due manner, time, or degree." Webster's Third New International Dictionary, Unabridged 700 (3rd ed. 2002). And "punctually" means to act "in a punctual manner," "punctual" being defined as "marked by exact adherence to an appointed time." *Id.* at 1843. In order to duly and punctually comply, IOS must have made all payments in a timely manner in accordance with the provisions of the lease. IOS failed to comply on a number of occasions, as shown by the multiple notices of default included in the record.

IOS's substantial performance argument also fails.[5] "Substantial performance is that which, 'despite deviations from the contract requirements, provides the important and essential benefits of the contract to the promisee.'"

---

[5] We note that IOS has failed to preserve error on the issue of substantial compliance because the issue was not ruled on by the district court or raised in IOS's motion to enlarge or amend. However, because the claim is not persuasive, it fails in either respect.

*SDG Macerich Props., L.P. v. Stanek Inc.*, 648 N.W.2d 581, 586 (Iowa 2002) (citation omitted). However, "[s]ubstantial performance will not excuse the nonoccurrence of an express condition precedent to a contract." *Id.*

Here, IOS made late payments for insurance premiums, taxes, and rent, requiring Vista to send at least six notices of default. Even if we can conclude IOS substantially complied with the important and essential contract requirements, we cannot conclude these payments were made in a duly and punctual manner in accordance with the express condition precedent. *See id.* ("Any conditions precedent to the option provision must be fulfilled according to the agreement for the option to become a contract between the parties."); *see also* 15 *Williston on Contracts* § 44:53 (Westlaw 2015) ("The general acceptance of the doctrine of substantial performance does not mean that the parties may not expressly contract for literal performance of their contract's terms; . . . . Thus, substantial performance is ordinarily not applicable to excuse the nonoccurrence of an express condition precedent to a contract."). Accordingly, substantial performance is not sufficient to establish the fulfillment of the condition precedent.

Based on IOS's numerous failures to pay insurance premiums, taxes, and rent in a timely manner, we find there was substantial evidence to support the district court's finding that IOS did not meet the condition precedent.

**V. Conclusion**

Substantial evidence supports the district court's finding that IOS did not duly and punctually fulfill its obligations under the lease and, thus, has not fulfilled

the condition precedent to entitle it to exercise the option to purchase.  Therefore, we affirm the ruling of the district court.

**AFFIRMED.**